## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | | |
|---|---|---|
| **ASHLEY MORROW** and **KARA JANKE** on behalf of themselves and all other persons similarly situated, known and unknown**,** | ) ) ) ) | **Case No. 2:25-cv-00661-BHL** |
| **Plaintiffs,** | ) ) | **Judge Brett H. Ludwig** |
| **v.** | ) ) | |
| **LAKELAND CARE, INC.,** | ) ) | |
| **Defendant.** | ) ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR COURT-AUTHORIZED FAIR LABOR STANDARDS ACT OPT-IN NOTICE

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 1

II.   BACKGROUND ..................................................................................................... 2

      A.    Relevant Procedural History .......................................................................... 2

      B.    Statement of Relevant Facts .......................................................................... 2

            1.    Defendant Lakeland Care ................................................................... 2

            2.    Care Managers Perform The Same Primary Job Duties. ................... 3

            3.    Defendant *Uniformly* Classified *All* Care Managers as Overtime-
                  Exempt. .............................................................................................. 5

            4.    Defendant Maintains the Same Qualifications for All Care
                  Managers, Consistent With the Requirements in the DHS Contract. ......... 5

            5.    Defendant Applied Common Policies and Procedures to All Care
                  Managers. ........................................................................................... 5

            6.    Plaintiffs and other Care Managers Did Not Receive Any Overtime
                  Pay When They Worked over 40 Hours Per Week as Salaried Care
                  Managers. ........................................................................................... 7

III.  LEGAL STANDARD .............................................................................................. 7

      A.    FLSA Collective Certification ...................................................................... 7

      B.    The Standard for Issuing Notice ................................................................... 8

      C.    The Court Should Not Adjudicate the Merits at the Notice Stage ............... 9

IV.   ARGUMENT ........................................................................................................... 9

      A.    Plaintiffs Have Presented Sufficient Evidence to Demonstrate a "Material
            Factual Dispute" As to Whether the Proposed Collective is Similarly
            Situated. ......................................................................................................... 9

      B.    Courts Routinely Certify FLSA Collective Actions In Overtime
            Misclassification Cases. .............................................................................. 12

      C.    The Court Should Approve Plaintiffs' Proposed Notice Program. ............ 13

            1.    The Court should require the production of names, addresses,
                  email addresses, and phone numbers and allow notice to be sent
                  via U.S. Mail, email, text message, and a standalone website. ................. 13

            2.    Plaintiffs' proposed Notice and Consent to Join Form should be
                  approved. .......................................................................................... 16

            3.    A 60-day opt-in period and Plaintiffs' proposed methods of Notice
                  should be approved. .......................................................................... 16

V.    CONCLUSION ..................................................................................................... 17

i

## TABLE OF AUTHORITIES

**Cases**

*Alvarado v. Int'l Laser Prod., Inc.*
2019 WL 3337995 (N.D. Ill. June 19, 2019).................................................................... 15

*Alvarez v. City of Chi.,*
605 F.3d 445 (7th Cir. 2010) ..................................................................................... 8

*Boltinghouse v. Abbot Labs., Inc.*
196 F. Supp. 3d 838 (N.D. Ill. 2016)........................................................................ 15

*Brashier v. Quincy Property, LLC*
2018 WL 1934069 (C.D. Ill. April 24, 2018)............................................................ 15

*Burr v. Loadsmart, Inc.*
759 F. Supp. 3d 881 (N.D. Ill. 2024)............................................................... *passim*

*Calvache v. Faith Church of Lafayette*
No. 24 Civ. 53, 2025 WL 1633919 (N.D. Ind. June 5, 2025) ................................ 14

*Campbell v. Marshall Int'l LLC*
623 F. Supp. 3d 927 (N.D. Ill. Aug. 25, 2022) ....................................................... 15

*Clark v. A&L Homecare & Training Ctr., LLC*
68 F.4th 1003 (6th Cir. 2023) ................................................................................... 10

*DePyper, et al. v. Roundy's Supermarkets Inc.*
2025 WL 2430460 (N.D. Ill. Aug. 22, 2025) ........................................................... 12

*Dobrov v. Hi-Tech Paintless Dent Repair, Inc.*
2025 WL 2720663 (N.D. Ill. Sep. 24, 2025)............................................................. 12

*Drummond v. Am. Family Mut. Ins. Co.*
2023 WL 2770563 (W.D. Wis. Apr. 4, 2023) ........................................................... 13

*Ford v. U.S. Foods, Inc.*
2020 WL 5979553 (N.D. Ill. Oct. 8, 2020) .............................................................. 16

*Glenn v. Monterrey Security Consultants, Inc.*
2025 WL 2026302 (N.D. Ill. July 21, 2025) ............................................................. 14

*Grosscup v. KPW Mgmt., Inc.*
261 F. Supp. 3d 867 (N.D. Ill. 2017)........................................................................ 15

*Hallman v. Flagship Restaurant Group, LLC*
2025 WL 3123995 (D. Neb. Nov. 7, 2025) ............................................................... 13

*Hoffmann–La Roche, Inc. v. Sperling*
493 U.S. 165 (1989) ..................................................................................... 8, 15, 17

*Holmes v. Sid's Sealants, LLC*
2017 WL 5749684 (W.D. Wis. Nov. 28, 2017) ........................................................ 13

*Ivery v. RMH Franchise Corp.*
280 F. Supp. 3d 1120 (N.D. Ill. 2017).............................................................. 16, 17

i

*Kelly v. Bank of Am., N.A.*
   2011 WL 7718421 (N.D. Ill. Sept. 23, 2011) ....................................... 14, 17

*Knox v. Jones Grp.*
   F. Supp. 3d 954 (S.D. Ind. 2016) ............................................................ 17

*Lucas v. JJ's of Macomb, Inc.*
   2019 WL 993657 (C.D. Ill. Feb. 8, 2019) ................................................ 15

*Lutz v. Froedtert Health, Inc.*
   2024 WL 2890991 (E.D. Wis. June 7, 2024) ........................................... 13

*Lyon v. Americare Systems, Inc.*
   2025 WL 2992556 (W.D. Mo. Oct. 21, 2025) .......................................... 13

*Mitchell v. Villas of Holly Brook Senior Living, LLC*
   2024 WL 3342504 (C.D. Ill. July 8, 2024) .............................................. 15

*Muir v. Guardian Heating and Cooling Servs., Inc.*
   2017 WL 959028 (N.D. Ill. Mar. 13, 2017) ............................................. 15

*O'Brien v. Smoothstack, Inc.*
   2024 WL 1356674 (E.D. Va. Mar. 28, 2024) ........................................... 14

*O'Neil v. Bloomin' Brands Inc.*
   707 F. Supp. 3d 768 (N.D. Ill. 2023) ...................................................... 16

*Owens v. GLH Capital Enterprise, Inc.*
   2017 WL 2985600 (S.D. Ill. July 13, 2017) ............................................. 15

*Pieksma v. Bridgeview Bank Mortg. Co., LLC*
   2016 WL 7409909 (N.D. Ill. Dec. 22, 2016) ........................................... 15

*Rego v. Liberty Mutual Managed Care, LLC*
   367 F. Supp. 3d 849 (E.D. Wis. 2019) ..................................................... 11

*Richards v. Eli Lilly & Co.*
   149 F.4th 901 (7th Cir. 2025) ......................................................... *passim*

*Rossman v. EN Engineering, LLC*
   2020 WL 5253861 (N.D. Ill. Sept. 3, 2020) ....................................... 15, 17

*Rottman v. Old Second Bancorp, Inc.*
   735 F. Supp. 2d 988 (N.D. Ill. 2010) ...................................................... 16

*Smallwood v. Illinois Bell Telephone Co.*
   710 F. Supp. 2d 746 (N.D. Ill. 2010) ...................................................... 17

*Sylvester v. Wintrust Fin. Corp.*
   2013 WL 5433593 (N.D. Ill. Sept. 30, 2013) .......................................... 16

*Watson v. Jimmy John's, LLC*
   2016 WL 106333 (N.D. Ill. Jan. 5, 2016) ................................................ 15

*Wilmoth v. Steak N Shake*
   2022 WL 1913026 (S.D. Ind. June 3, 2022) ............................................ 15

ii

**Statutes**

Fair Labor Standards Act ............................................................................................ *passim*

**Regulations**

29 C.F.R § 541.202 ..................................................................................................... 12

29 C.F.R. § 541 ............................................................................................................. 5

29 C.F.R. § 541.600 ..................................................................................................... 12

## I. INTRODUCTION

Plaintiffs Ashley Morrow and Kara Janke ("Plaintiffs") filed this collective action alleging that Lakeland Care, Inc. ("Defendant") violated the Fair Labor Standards Act ("FLSA") by classifying Plaintiffs and other IDT Care Managers ("Care Managers") employed by Defendant as overtime-exempt and failing to pay them overtime despite them regularly working over forty (40) hours per week. *See* ECF No. 25 (First Amended Complaint ("FAC")) at ¶¶ 1-3. Through this Motion, Plaintiffs seek to issue notice under Section 216(b) of the FLSA to similarly situated employees who worked for Defendant during the last three years.

The standard for issuing notice under the FLSA is not difficult for employees to satisfy. As the Seventh Circuit recently observed, a plaintiff need only "produce some evidence suggesting that they and the members of the proposed collective are victims of a common unlawful employment practice or policy." *Richards v. Eli Lilly & Co.*, 149 F.4th 901, 913 (7th Cir. 2025). This evidence "need not be definitive" and must be evaluated in light of the fact that, at the notice stage, relevant information is often "in the hands of individuals who are not yet parties to the action." *Id.* at 912.

As discussed herein, that standard is clearly met here. Plaintiffs and the proposed Collective Members are similarly situated because they (1) were uniformly classified as overtime-exempt by Defendant and therefore not paid overtime compensation when they worked over 40 hours in a week; and (2) all held the same job position and performed the same non-exempt duties, as evidenced by Defendant's common job descriptions, Defendant's contract with the Wisconsin Department of Health Services, and common policies and procedures governing the work Care

1

Managers perform. As a result, this Court should allow Plaintiffs to send notice of this lawsuit by mail, email, and text message to the following collective:

> All current and former IDT Care Managers who have worked, or continue to work, for Defendant during the last three years and 24 days and who Defendant classified as exempt from the overtime provisions of the FLSA ("Collective Members"). [1]

## II.    BACKGROUND

### A.    Relevant Procedural History

On May 5, 2025, Plaintiff Morrow filed her Complaint alleging violations of the FLSA for Defendant's failure to pay her and other Care Managers overtime. ECF No. 1 (Complaint). On August 5, 2025, Plaintiff Morrow filed an Amended Complaint that added Kara Janke as an additional named plaintiff. ECF No. 25 (FAC). Plaintiffs allege that Defendant misclassified Plaintiffs and other Care Managers as exempt employees, paid them a salary, and failed to pay them overtime compensation when they worked over 40 hours in individual workweeks. *Id.* ¶¶ 2, 63. Plaintiffs bring this action as a putative collective action under the FLSA. *Id.* ¶ 3.

As of the date of the filing of this Motion, two (2) other Care Managers have joined Plaintiffs Morrow and Janke by filing consents to join this case (the "Opt-in Plaintiffs"). ECF Nos. 17, 19.

### B.    Statement of Relevant Facts

#### 1.    Defendant Lakeland Care

Defendant is a Managed Care Organization ("MCO") that contracts with the Wisconsin Department of Health Services ("DHS") to provide services under the State of Wisconsin's Family Care Medicaid long-term care program. ECF No. 25 (FAC) at ¶ 9; ECF No. 27 (Answer) at ¶ 9. Under Defendant's contract with DHS (hereafter, the "DHS Contract"), Defendant provides

---

[1]    The additional 24 days accounts for a tolling agreement between the Parties to accommodate delays associated with Defendant's responses to Plaintiffs' written discovery requests.

managed care services to enrollees of the Wisconsin Family Care Medicaid program ("Members") in exchange for a monthly capitation fee and incentive payments from DHS. ECF No. 25 (FAC) at ¶ 10; ECF No. 27 (Answer) at ¶ 10. Family Care is a Wisconsin Medicaid long-term care program for older adults and adults with disabilities that provides Medicaid-covered long-term service and support and outpatient behavioral health care for qualifying Wisconsinites. ECF No. 27 (Answer) at ¶ 25.

Pursuant to the DHS Contract, Defendant provides care management services to Members through an interdisciplinary care management team ("IDT"). The IDT consists of, at a minimum, the Member, a Wisconsin licensed Registered Nurse, and a social service coordinator. Ex. 1 (Excerpts from the DHS Contract, Jan. 1, 2024)[2] D00000996-1366 at D00001057.[3] Plaintiffs, the Opt-in Plaintiffs, and other similarly-situated Care Managers perform social services coordinator IDT functions for Defendant under the DHS Contract. Ex. 2 (Excerpts from Defendant's Interrogatory Responses) at Answer No. 2, p. 9 ("Lakeland's [IDT] consists of the member being served, one Care Manager, one RN Care Manager, and anyone else the member wants on his or her team . . .").

### 2. Care Managers Perform The Same Primary Job Duties.

Care Managers' primary job duties are set forth in the DHS Contract. *See* Ex. 1 at D00001058-76. In fact, Defendant's standardized job description for Care Managers explicitly states that the work Care Managers perform is "per LCI policy and procedures, and Department of

---

[2] The exhibits cited in this Memorandum of Law are being filed herewith as exhibits to the Authenticating Declaration of Sarah J. Arendt ("Attachment 1, Arendt Declaration").

[3] Defendant has produced DHS contracts for 2020, 2024, and 2025. Although the contract has been renewed from time to time, based on Plaintiffs' counsel's review of the contracts, all the contracts contain virtually the same language specifying Care Managers' primary duties and the timelines for performance of those duties. Attachment 1, (Arendt Declaration) at ¶ 3. This memorandum therefore cites to the contract version dated January 1, 2024, only. Plaintiffs will provide the other versions upon request.

3

Health Services (DHS) contract requirement." Ex. 3 (Job Description) at D00000557. Those primary duties include: meeting with Members (along with a Registered Nurse on the IDT team) to complete comprehensive assessments using an DHS-approved questionnaire; entering information collected from Members during the comprehensive assessment into Defendant's care management software; producing Member-Centered Plans ("MCPs") for Members based on the comprehensive assessment according to Defendant's DHS-approved service authorization policies and procedures; conducting in-person, telephonic, and video follow-up visits with Members; performing reassessments with Members; updating Members' MCPs; arranging and coordinating services and supports for Members with Defendant's approved providers consistent with Defendant's DHS-approved policies and procedures; and monitoring those services and supports. *Id.*; Ex. 3 (IDT Care Manager Job Description) D00000557-59 at D00000557 ("As a member of the IDT, the care manager arranges for provision of services and supports based on a comprehensive assessment of the member's identified outcomes and needs.); *see also* Ex. 4, Declaration of Ashley Morrow ("Morrow Decl.") ¶ 3; Ex. 5, Declaration of Kara Janke ("Janke Decl.") ¶ 3; Ex. 6, Declaration of Korinne Hejhal ("Hejhal Decl.") ¶ 3.

Defendant's contract with DHS not only specifies the duties Care Managers must perform, but also the timelines by which they must be completed. *See* Ex. 1 (DHS Contract) at D00001069-71; *see also* Ex. 4, Morrow Decl., ¶¶ 3, 7-8; Ex. 5, Janke Decl., ¶¶ 3, 7-8; Ex. 6, Hejhal Decl., ¶¶ 3, 7-8. The DHS contract also specifies that the comprehensive assessment and MCP must be completed pursuant to standardized questionnaires and templates and specifies what information must be documented. Ex. 1 (DHS Contract) at D00001059-62, D00001064-66. These questionnaires and templates generally consist of multiple choice, "Yes" or "No," and fill-in-the blank questions. Ex. 4, Morrow Decl., ¶ 6; Ex. 5, Janke Decl., ¶ 6; Ex. 6, Hejhal Decl., ¶ 6.

4

### 3. Defendant *Uniformly* Classified *All* Care Managers as Overtime-Exempt.

In its answer, Defendant asserts that Plaintiffs are exempt from overtime under the administrative exemption and the learned professional exemption. ECF No. 27 (Answer) at Affirmative Defenses 3 & 4. Defendant's Interrogatory responses further confirm that it has uniformly classified all Care Managers as exempt, stating "Lakeland Care, Inc. has classified the IDT Care Manager position as exempt using the Administrative Exemption under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 213(a)(1) and 29 C.F.R. Part 541, Subpart C, as well as the Learned Professional Exemption under the FLSA, 29 U.S.C. § 213(a)(1) and 29 C.F.R. Part 541, Subpart D." Ex. 2 (Defendant's Interrogatory Responses) at Answer No. 2, p. 8.

### 4. Defendant Maintains the Same Qualifications for All Care Managers, Consistent With the Requirements in the DHS Contract.

Defendant also maintains common job qualifications for its Care Managers, who must: (1) be Certified Social Workers in Wisconsin with a minimum of one year of experience working with at least one of the Family Care target populations *or* (2) have a four-year bachelor's degree or more advanced degree in Human Services or a related field with one year of experience working with at least one of the Family Care populations; *or* (3) have a four-year bachelor's degree or more advanced degree in any other area than Human Services with a minimum of three years' experience working with at least one of the Family Care target populations. *See* Ex. 3 (Job Description) at D00000558. This is consistent with the qualification requirements for Care Managers set forth in the DHS Contract. Ex. 1 (DHS Contract) at D00001366.

### 5. Defendant Applied Common Policies and Procedures to All Care Managers.

Although discovery is still in the early stages, Defendant has produced documents and discovery responses showing that its Care Managers worked pursuant to a common set of company policies. This evidence includes: (i) a common job description that states that Care Managers

perform their duties "per LCI policy and procedures, and [DHS] contract requirements," *see* Ex. 3 (Job Description) at D00000557; (ii) copies of Defendant's contracts with the DHS throughout the relevant period showing that Lakeland is contractually obligated to ensure that Care Managers perform specific enumerated duties and follow specified timelines, and to maintain standard policies and forms that Care Managers must follow in performing their work, *see* Ex. 1 (DHS Contract) at D00001058-76; (iii) a standardized Care Management Practice Guidebook, *see* Ex. 7 (Excerpts from the Care Management Practice Guidebook), D00000070-136 at D00000074, 76-83, 103-108, 112-16, and 126-36; and (iv) admissions in Defendant's interrogatory responses.

Defendant's Care Management Practice Guidebook (the "Guidebook") exemplifies the type of common policies and procedures relevant to Plaintiffs' FLSA claims. The Guidebook provides a "[m]inimum set of care management expectations to assure a consistent approach in assessing and supporting members." Ex. 7 (Guidebook) at D00000074. For example, the Guidebook contains Defendant's policies concerning, *inter alia*: (i)  the common roles and responsibilities of IDT team members, including Care Managers, *see id.* at D00000076-83 (ii) common workflows and checklists for completing assessments with members, *see id*. at D00000126-36; (iii) the frequency and format of contacts with members, *see id.* at D00000103-108; and (iv) uniform procedures pertaining to time tracking of work performed, *see id*. at D00000112-16.

Defendant's interrogatory answers further reflect the common training and tools that Care Managers receive and are required to use in the performance of their job duties. Lakeland admits, for example, that it "must provide Care Managers with new-hire and ongoing specialized training in long-term care case management, including assessing individualized long-term care outcomes, authorizing Medicaid services available in an individual member's benefit package, and accurate

documentation and member recordkeeping." Ex. 2 (Def's Interrog. Responses) at Answer No. 2, p. 15. It also admits that Care Managers are required to use a common platform, TruCare, to document all "member-related information, including assessments, care plans, demographics, and case notes" and that the software is "used to ensure compliance with [the] DHS contract and internal policies." *Id.* at Answer No. 3, p. 16-17. Finally, Lakeland admits that it maintains the same "target caseload" for all Care Managers, *i.e.*, the target number of members that each Care Manager is to be assigned at any given time. *See id.* at Answer No. 11, p. 25-26.

### 6. Plaintiffs and other Care Managers Did Not Receive Any Overtime Pay When They Worked over 40 Hours Per Week as Salaried Care Managers.

Plaintiffs and Opt-In Plaintiffs typically worked over 40 hours per week. Ex. 4, Morrow Decl., ¶ 9; Ex. 5, Janke Decl., ¶ 9; Ex. 6, Hejhal Decl., ¶ 9. They also have personal knowledge that other Care Managers typically worked more than 40 hours per week. Ex. 4, Morrow Decl., ¶ 10; Ex. 5, Janke Decl., ¶ 10; Ex. 6, Hejhal Decl., ¶ 9. However, consistent with its company-wide policy of treating all Care Managers as overtime-exempt, Defendant did not pay them any overtime premium pay for working more than 40 hours per week. Ex. 4, Morrow Decl., ¶ 11; Ex. 5, Janke Decl., ¶ 11; Ex. 6, Hejhal Decl., ¶ 10.[4]

## III.   LEGAL STANDARD

### A.   FLSA Collective Certification

The FLSA "permits employees to bring so-called collective actions to sue employers for violations of the FLSA on behalf of themselves and other similarly situated employees." *Richards*,

---

[4]      Even Defendant's job descriptions for the Care Manager position acknowledge that Care Managers may be called upon to work overtime, stating that although "[w]ork hours are generally during normal business hours of 8:00 am - 4:30 pm . . . unscheduled evening and weekend work may occasionally be necessary to meet members' needs and/or the needs of the organization." Ex. 3 (Job Description) at D00000559.

149 F.4th at 905 (citing 29 U.S.C. § 216(b)). Unlike Rule 23 class actions, where potential class members "will be bound by the disposition of the case unless they opt out of the class," an FLSA collective action requires prospective plaintiffs to "affirmatively opt in." *Id.* at 906. "Conditional certification does not produce a legal class or join any parties to the action." *Id.* at 907. Rather, "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees." *Id.* at 908 (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)).

In order for "the benefits of collective actions" to be "effectively realized," courts must ensure that "notice is timely and accurate." *Id.* at 910 (citing *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). Collective actions provide employees with "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche*, 493 U.S. at 170. These advantages, however, "depend[] on employees receiving accurate and timely notice . . . so that they can make informed decisions about whether to participate." *Hoffmann-LaRoche*, 493 U.S. at 170. As such, district courts have a "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Id.* at 170-71.

"[D]istrict courts generally enjoy 'wide discretion to manage collective actions.'" *Richards*, 149 F.4th at 909 (quoting *Alvarez v. City of Chi.*, 605 F.3d 445, 449 (7th Cir. 2010)). Further, "district courts should decide *as soon as practicable* whether notice is appropriate and are empowered to use their equitable tolling authority to ensure that plaintiffs are not unfairly disadvantaged by any delays in discovery." *Richards*, 149 F.4th at 914 (emphasis added).

### B. The Standard for Issuing Notice

The Seventh Circuit recently established the framework that district courts in this Circuit should use in deciding whether to allow notice to issue in FLSA collective actions. *See* generally *Richards*, 149 F. 4th 901. Specifically, the Seventh Circuit held that district courts "may issue

8

notice to potential plaintiffs when the named plaintiffs have raised at least a material factual dispute as to the similarity of potential plaintiffs." *Id.* at 905. To meet the threshold, "a plaintiff must produce some evidence suggesting that they and the members of the proposed collective are victims of a common unlawful employment practice or policy." *Id.* at 913. This evidence "need not be definitive[,]" *id.* at 913, and it must be evaluated in light of the fact that, at the notice stage, relevant information is often "in the hands of individuals who are not yet parties to the action." *Id.* at 912.

Where "the evidence necessary to resolve a similarity dispute is likely in the hands of yet-to-be-noticed plaintiffs[,]" the Court can "proceed with a two-step approach—that is, it may issue notice to the proposed collective while postponing the final determination as to whether plaintiffs are similarly situated until plaintiffs move for certification after opt-in and discovery are complete." *Id*. at 913.

### C. The Court Should Not Adjudicate the Merits at the Notice Stage

The Seventh Circuit also emphasized in *Richards* that while district courts "need not refuse to consider merits issues altogether" at the notice stage, their inquiry "should not devolve into an early adjudication of the merits." *Id.* at 914. This is because the statute of limitations continues to run for each potential opt-in plaintiff until they file a written consent, and delays due to discovery "risk[] running out the clock on putative plaintiffs' FLSA claims." *Id.* at 906-07. Accordingly, "expeditious notice is particularly important in FLSA cases" to preserve potential opt-in plaintiffs' claims. *Id.* at 907.

## IV. ARGUMENT

### A. Plaintiffs Have Presented Sufficient Evidence to Demonstrate a "Material Factual Dispute" As to Whether the Proposed Collective is Similarly Situated.

9

Applying the Seventh Circuit's *Richards* standard to this case, Plaintiffs have more than met their burden to "produce some evidence suggesting that they and the members of the proposed collective are victims of a common unlawful employment practice or policy." *Id.* at 913. Notice should therefore issue to protect the rights of potential opt-in plaintiffs.

First, Defendant admits that it classified all salaried Care Managers as exempt from the FLSA's overtime mandate. This "across-the-board" classification policy justifies collective litigation. Although Defendant will likely argue that its classification of Care Managers was proper, the Seventh Circuit in *Richards* explicitly acknowledged that such a common merits dispute weighs in favor of conditional certification. The Seventh Circuit observed that:

> A defendant might, for example, present evidence that the proposed collective includes employees who are exempt from FLSA protections. If true, this fact would certainly affect the merits of those plaintiffs' claims. But it is also directly relevant to assessing whether the collective is similarity situated—that is, "whether the merits of other-employee claims would be similar to the merits of the original plaintiffs' claims" such that "collective litigation would yield 'efficient resolution in one proceeding.'"

*Richards*, 149 F.4th at 914-15 (quoting *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1012 (6th Cir. 2023)). This case falls squarely in this paradigm. Due to Defendant's across-the-board-classification of Care Managers as exempt, as well as its common policies governing their work, the merits of other employees' claims will be similar to those of Plaintiffs and Opt-In Plaintiffs. Therefore, permitting collective litigation in this case will "yield efficient resolution in one proceeding." *Richards*, 149 F.4th at 915 (internal quotation marks and citation omitted).

Second, Defendant's own company documents show that Defendant's Care Managers perform the same job duties consistent with the provisions of the DHS Contract and subject to Defendant's common policies and procedures. *See supra* at Section II.B.2.

Third, Plaintiffs have submitted three declarations confirming that salaried Care Managers typically worked more than 40 hours per week; are aware that other Care Managers worked more

10

than 40 hours per week; were paid on a salaried basis; did not receive any overtime pay; were required to complete the same training; and were required to follow the same rules and policies in performing their primary job duties. *See* Ex. 4, Morrow Decl., ¶¶ 3, 6-7, 9-13; Ex. 5, Janke Decl., ¶¶ 3, 6-7, 9-11, 13; Ex. 6, Hejhal Decl., ¶¶ 3, 6-7, 9-10, 12. These declarations further support the evidence in Defendant's own documents and support the issuance of notice. This combined evidence is more than sufficient to meet Plaintiffs' burden under *Richards*.

As discussed *supra* at Section III.C, the Court's notice inquiry "should not devolve into an early adjudication of the merits[,]" *Richards*, 149 F.4th at 914. Nonetheless, Defendant's own documents show that the Court will be able to resolve the application of Defendant's affirmative defenses on a collective basis. First, as an MCO, one of Defendant's core functions is to provide managed care to Family Care Members. Ex. 1 (DHS Contract) at D00001004 ("[DHS] contracts with the Managed Care Organization (MCO) to deliver the Family Care Program … as defined in this contract. Th[is] program[] provide[s] supports and services in the individual benefit package *through a managed care service delivery model* to enrollees in need to long-term care.") (emphasis added). The primary duty of all Care Managers is to provide these managed care services pursuant to the DHS Contract. Because Care Managers' work is essential to Defendant's core function, therefore, it cannot be properly considered exempt administrative work. *See Rego v. Liberty Mutual Managed Care, LLC,* 367 F. Supp. 3d 849, 855 (E.D. Wis. 2019) (holding that utilization management nurses employed by an MCO were not administratively exempt because their utilization review work was one of the core functions of the MCO and therefore the work was not administrative).

Second, Defendant's common policies and procedures also demonstrate that the level of "discretion and independent judgment with respect to matters of significance" exercised by Care

Managers can be determined through reference to common evidence. 29 C.F.R § 541.202. For example, instructions in the Guidebook illustrate the Care Managers' lack of discretion. The Guidebook emphasizes the importance of the Member in making decisions about their care, stating that "[d]ecisions are made by the member *and* the IDTS; decisions should *not* be made by the IDTS without the member." Ex. 7 (Guidebook) at D00000076. Elsewhere, it explains that "[u]litmately the member is responsible for making their own informed decisions with IDTS assistance" and that the IDT's role "is working through processes and making decision, *with, not for,* the individual" and "[i]t is *not* the IDTS deciding *for* the member based on what IDTS feel is best for the member." *Id.* at D00000089.

Third, the common qualifications to be a Care Manager – as documented both in the DHS contract and in Defendant's job description for Care Managers, *see* Section II.B.4, *supra*, – also demonstrate that the applicability of the FLSA's "learned professional" exemption can be made on a collective-wide basis, because Defendant maintains the same common education and license requirements for all Care Managers. *See* 29 C.F.R. § 541.600.

## B.    Courts Routinely Certify FLSA Collective Actions In Overtime Misclassification Cases.

Because the *Richards* decision was issued only a few months ago, Plaintiffs' Counsel is only aware of two decisions referencing the *Richards* framework in deciding a motion for court-authorized notice. However, both decisions were issued by district courts outside of this Circuit and only mention *Richards* in passing.[5] *See Hallman v. Flagship Restaurant Group, LLC,* No.

---

[5]    Two other district court decisions address collective certification following *Richards* but not in the notice context. One case was at the "final certification" stage after a court had conditionally certified the collective earlier in the case, *DePyper, et al. v. Roundy's Supermarkets Inc.*, Nos. 20 CV 2317, 22 CV 2084, 2025 WL 2430460 (N.D. Ill. Aug. 22, 2025). The other considered certification after all discovery had closed, and granted collective (as well as class) certification. *Dobrov v. Hi-Tech Paintless Dent Repair, Inc.*, No. 1:20-CV-00314, 2025 WL 2720663 (N.D. Ill. Sep. 24, 2025).

8:24CV222, 2025 WL 3123995, at *7 (D. Neb. Nov. 7, 2025) (granting FLSA notice to potential opt-ins on the basis of five declarations while citing *Richards* but applying the general "two-step analysis used within several circuit courts, including the Eight[h] Circuit's district courts"); *Lyon v. Americare Systems, Inc.,* No. 24-03207-CV-S-BP, 2025 WL 2992556, at *2, n. 3 (W.D. Mo. Oct. 21, 2025) (granting the plaintiff health care worker's motion for notice while referencing *Richards* but noting that the defendant "does not endorse a specific test and does not apply any of them to this case.").

Despite the lack of additional guidance from district courts in this Circuit, the quantum of evidence Plaintiffs have offered in support of their motion compares favorably to evidence offered in other pre-*Richards* cases in which courts in the Seventh Circuit granted class certification. District judges in this Circuit have granted conditional certification based on much *less* evidence than Plaintiffs present here. *See, e.g., Burr v. Loadsmart, Inc.*, 759 F. Supp. 3d 881, 888-90 (N.D. Ill. 2024) (several declarations and job postings showing common job duties, along with a shared exempt classification, was sufficient to satisfy the "similarly situated" showing); *Lutz v. Froedtert Health, Inc.,* No. 23-CV-974, 2024 WL 2890991, at *3 (E.D. Wis. June 7, 2024) (granting FLSA notice based on the defendant's uniform policy for calculating overtime compensation); *Drummond v. Am. Family Mut. Ins. Co.*, No. 22-cv-338-wmc, 2023 WL 2770563, at *2 (W.D. Wis. Apr. 4, 2023) (the declarations of five employees coupled with defendant's admission that it classified all employees in the job title as exempt was sufficient for notice to issue); *Holmes v. Sid's Sealants, LLC*, No. 16-cv-821-wmc, 2017 WL 5749684, at *3 (W.D. Wis. Nov. 28, 2017) (granting conditional certification on the basis of the plaintiff's own declaration).

## C. The Court Should Approve Plaintiffs' Proposed Notice Program.

### 1. The Court should require the production of names, addresses, email addresses, and phone numbers and allow notice to be sent via U.S. Mail, email, text message, and a standalone website.

13

Plaintiffs request that the Court order Defendant to produce, in a computer readable format, the names, employee ID numbers, job titles, start and end dates, last known addresses, personal email addresses, and telephone numbers of the Collective Members, and to allow notice to be disseminated through (1) U.S. Mail, (2) email, and (3) text message. Plaintiffs also request that the Notice be posted on a standalone website so FLSA Collective Members may submit their consent forms electronically and that the written Notice include a QR code that links to the standalone website where potential collective members may submit their Consent to Join Forms. *See Glenn v. Monterrey Security Consultants, Inc.* No. 24-cv-8260, 2025 WL 2026302, at *6 (N.D. Ill. July 21, 2025) (authorizing plaintiff to create a website to host the notice and to include a QR code in the written notice to allow submission of consent to join forms via the website); *Calvache v. Faith Church of Lafayette,* No. 24 Civ. 53, 2025 WL 1633919, at *4 (N.D. Ind. June 5, 2025) (concluding there is "no reason that notice shouldn't be available online, with an option to complete it online" in this "age of online information"); *Burr v. Loadsmart, Inc.*, No. 23 Civ. 3708, 2024 WL 5119902, at *5-6 (N.D. Ill. Dec. 16, 2024) (permitting potential collective members to submit consent forms electronically through standalone website); *O'Brien v. Smoothstack, Inc.,* No. 23 Civ. 491, 2024 WL 1356674, at *9 (E.D. Va. Mar. 28, 2024) (allowing notice with a QR code linked to a standalone website for potential collective members to access and submit the consent to join form electronically); *Kelly v. Bank of Am., N.A.*, No. 10 Civ. 5332, 2011 WL 7718421, at * 2 (N.D. Ill. Sept. 23, 2011) (granting plaintiffs' request to post notice to website and allow online submissions of consent forms through website)*.* Doing so will ensure the FLSA Collective Members will receive notice of this action and are given an adequate opportunity to join the litigation. Sending notice in the manner proposed by Plaintiffs is routine in FLSA cases and helps ensure the potential Collective Members will receive "accurate and timely notice" of the pending collective action, as

necessary to effectuate the remedial purposes of the FLSA. *Hoffmann-La Roche*, 493 U.S. at 169;

*Pieksma v. Bridgeview Bank Mortg. Co., LLC*, No. 15 C 7312, 2016 WL 7409909, at *6 (N.D. Ill.

Dec. 22, 2016).[6]

Ordering production of the kind of information that Plaintiffs request is also routine in

FLSA cases in the Seventh Circuit because it facilitates locating collective members and ensuring

---

[6]    *See also Alvarado v. Int'l Laser Prod., Inc.*, 2019 WL 3337995, at *3 (N.D. Ill. June 19, 2019) ("The court agrees with Plaintiffs that e-mail and text communication is the most straightforward and effective method of communicating with the potential class members."); *see also Burr*, 2024 WL 5119902, at *6 (recognizing that notice via text "is appropriate because many Americans use text messages as their primary contact . . . much more than they would email or regular mail" and approving notice by mail, email, website, text message, and social media posting) (internal citations and quotations omitted); *Wilmoth v. Steak N Shake*, 2022 WL 1913026 (S.D. Ind. June 3, 2022) (approving notice by mail, email, and website); *Lucas v. JJ's of Macomb, Inc.,* 2019 WL 993657, at *6 (C.D. Ill. Feb. 8, 2019) (approving sending of the notice and consent forms via regular U.S. mail, email, and text message); *Campbell v. Marshall Int'l LLC*, 623 F. Supp. 3d 927, 935 (N.D. Ill. 2022) (permitting notice by mail, email, and text message and acknowledging that email is the norm in the Seventh Circuit and "[a]uthorization of notice by text message is increasingly common, particularly where plaintiffs are transitory"); *Rossman v. EN Engineering, LLC*, No. 19-cv-05768, 2020 WL 5253861, at *6 (N.D. Ill. Sept. 3, 2020) (notice by mail, email, and text message was reasonable where potential collective members were assigned to work at numerous different jobsites); *see also Mitchell v. Villas of Holly Brook Senior Living, LLC*, No. 22 Civ. 2269, 2024 WL 3342504, at *17 (C.D. Ill. July 8, 2024) (recognizing that "any moderate intrusion caused by . . . text message . . . is outweighed by the interest in apprising all potential class members of th[e] action" and allowing notice via text message) (internal quotations omitted); *Grosscup v. KPW Mgmt., Inc.*, 261 F. Supp. 3d 867 at 880 (N.D. Ill. 2017) (authorizing notice be sent by email because "communication by email is the norm" and "enhances the chance potential plaintiffs receive the notice."); *Boltinghouse v. Abbot Labs., Inc.,* 196 F. Supp. 3d 838, 844 (N.D. Ill. 2016) (permitting notice to be sent by both mail and email because doing so advances the remedial purposes of the FLSA by increasing the likelihood that all potential opt-in plaintiffs will receive notice); *Muir v. Guardian Heating and Cooling Servs., Inc*., No. 16 Civ. 9755, 2017 WL 959028, at *10 (N.D. Ill. Mar. 13, 2017) (finding "[i]t is common practice to grant a request for potential plaintiffs' names, phone numbers, and physical addresses" and providing "email addresses are also standard fare."); *Watson v. Jimmy John's, LLC*, No. 15 Civ.6010, 2016 WL 106333, at *1 (N.D. Ill. Jan. 5, 2016) (finding "allowing email notice will facilitate, rather than complicate, the notice process, and that the likelihood that unauthorized reproduction or dissemination of manipulated notices will disrupt the litigation is slight."); *Brashier v. Quincy Property, LLC,* No. 17 Civ. 3022, 2018 WL 1934069, at *6-7 (C.D. Ill. April 24, 2018) (finding notice by text message appropriate); *Owens v. GLH Capital Enterprise, Inc*., No. 16 Civ. 1109-NJR-SCW, 2017 WL 2985600, at *5 (S.D. Ill. July 13, 2017) (permitting notice be sent via text message).

they receive timely notice of the action. *O'Neil v. Bloomin' Brands Inc.*, 707 F. Supp. 3d 768, 780 (N.D. Ill. 2023) (ordering defendant to provide Excel file with contact information); *Ford v. U.S. Foods, Inc.*, No. 19 Civ. 05967, 2020 WL 5979553, at *4 (N.D. Ill. Oct. 8, 2020) (ordering production of Excel spreadsheet containing names, job titles, contact information and employment dates); *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1120, 1140 (N.D. Ill. 2017) (ordering production of contact information within fourteen days of conditional certification).

### 2. Plaintiffs' proposed Notice and Consent to Join Form should be approved.

Plaintiffs' proposed Notice and Consent to Join Form (attached hereto as Exhibit 8) is accurate, simple to understand, and conveys all information necessary at this stage. Although this "[c]ourt has both the power and the duty to ensure that the notice is fair and accurate, [] that power should not be used to alter plaintiffs' proposed notice unless such alteration is necessary." *Ivery*, 280 F. Supp. 3d at 1140 (internal citations and quotations omitted). As a result, "[a]bsent reasonable objections by either the defendant or the Court, plaintiffs should be allowed to use the language of their choice in drafting the notice." *Sylvester v. Wintrust Fin. Corp.*, No. 12 C 01899, 2013 WL 5433593 at *6 (N.D. Ill. Sept. 30, 2013). "The only thing that matters to the Court is that the notice of lawsuit and consent form convey accurately and fairly all the necessary information at this stage." *Id.* Because Plaintiffs' proposed Notice and Consent to Join Form meets this standard, it should be approved.

### 3. A 60-day opt-in period and Plaintiffs' proposed methods of Notice should be approved.

Plaintiffs' request for a 60-day notice period is reasonable. *See, e.g., Burr*, 2024 WL 5119902, at *5 ("The Court . . . finds that 60 days is a reasonable period that provides ample opportunity for prospective class members to opt in."); *Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 994 (N.D. Ill. 2010) (90 day opt-in period); *Smallwood v. Illinois Bell Telephone*

16

*Co.,* 710 F. Supp. 2d 746, 753 (N.D. Ill. 2010) (60 day opt-in period); *Kelly,* 2011 WL 7718421, at *2 (60 day opt-in period).

Plaintiffs also seeks authorization to send an identical reminder notice to all potential Collective Members via U.S. mail, email, and text message half-way through the notice period in the same manner described above. People lead busy lives and may forget about returning consent forms with a seemingly distant deadline, may misplace consent forms, and/or may be gone from their homes for extended periods of time. For these reasons, courts in the Seventh Circuit routinely authorize reminder notices to be sent. *Burr,* 2024 WL 5119902, at *5-6 (granting plaintiffs' request to send reminder notice 30 days into 60 day opt in period); *Campbell,* 623 F. Supp. 3d at 935 (permitting transmission of reminder notice and recognizing that "reminder notices are regularly authorized because they further '[t]he purpose of a step-one notice,' which is 'to inform potential class members of their rights.'") quoting *Knox v. Jones Grp*., F. Supp. 3d 954, 964 (S.D. Ind. 2016); *Rossman,* 2020 WL 5253861, at *6 (approving reminder notice where potential collective members were spread across different jobsites); *Ivery,* 280 F. Supp. 3d at 1140 (allowing reminder notice to be sent to putative collective members); *see also Hoffmann-La Roche,* 493 U.S. at 170 (the benefits of collective actions "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.").

## V.       CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their Motion for Notice and enter an Order:

(1) requiring Defendant to produce the names, employee ID numbers, job titles, start and end dates, last known addresses, personal email addresses, and personal telephone numbers of

Collective Members (in usable electronic format to reduce delay in sending notices) within fourteen (14) days from the entry of an Order;

(2) authorizing Plaintiffs to send the Notice and Consent to Join Forms by U.S. Mail, email, and text message to potential collective members;

(3) authorizing Plaintiffs to create a standalone website that will host the Notice and allow potential collective members to submit the Consent to Join Form electronically;

(4) including a QR code in the written Notice that links to the standalone website where potential collective members may submit their Consent to Join Form; and

(5) authorizing Plaintiffs to send a reminder notice via U.S. Mail, email and text message to potential collective members who have not yet opted into the case 30 days prior to the close of the opt-in period.

Respectfully submitted,

Dated: November 14, 2025

*/s/Sarah J. Arendt*

Douglas M. Werman – WIED Bar No. 6204740
Sarah J. Arendt – WIED Bar No. 6308501
**WERMAN SALAS P.C.**
77 W. Washington St., Suite 1402
Chicago, IL 60602
(Tel): 312-419-1008
Email: dwerman@flsalaw.com
      sarendt@flsalaw.com

Peter Winebrake – WIED Bar No. 2523611
Deirdre Aaron – WIED Bar No. 4939245
**WINEBRAKE & SANTILLO, LLC**
715 Twinning Ave, Suite 211
Dresher, PA 19025
(Tel): 215-884-2491
Email: pwinebrake@winebrakelaw.com
      daaron@winebrakelaw.com

***Attorneys for Plaintiffs***

18